UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
BOC AVIATION LIMITED,                  :
                    Plaintiff,        Case No. 22 Civ. 2070
                                  :
   - against -                         :  **VERIFIED COMPLAINT**

AIRBRIDGECARGO AIRLINES, LLC,          :
                    Defendant.
------------------------------------- X

Plaintiff BOC Aviation Limited ("BOCA" or "Plaintiff"), by and through its attorneys, Smith, Gambrell & Russell, LLP, alleges against defendant AirBridgeCargo Airlines, LLC ("AirBridge" or "Defendant") as follows:

## NATURE OF THE ACTION

1. BOCA is the owner of a Boeing 747-8F aircraft that it leased to AirBridge, a privately owned Russian company that operates as a Russian cargo airline. The aircraft is currently located in Hong Kong. Reinsurance covering the aircraft was recently canceled and invalidated pursuant to sanctions issued by the European Union. The aircraft's current value exceeds US$148 million.

2. The cancellation of reinsurance triggered a default under a provision of the parties' lease agreement that requires AirBridge to maintain specific types and amounts of reinsurance.

3. The lease agreement gives BOCA broad authority to repossess immediately the aircraft and its records in the event of a default by AirBridge, specifically authorizing BOCA to enter upon the premises where the aircraft is located and take immediate possession and remove the aircraft, by summary proceedings or otherwise.

4. Critically, under the lease agreement, AirBridge waives any right it may have under law to a hearing prior to the repossession of the aircraft.

5. BOCA is also entitled to immediate possession of the aircraft under Article 20 of the Consolidated Text of Convention on International Interests in Mobile Equipment and the Protocol to the Convention on International Interests in Mobile Equipment on Matters Specific to Aircraft Equipment Signed at Cape Town on 16 November 2001 (the "CTC"), an international treaty that governs this dispute. Under the CTC, BOCA is entitled to immediate possession, control and custody of the aircraft upon a showing of default by AirBridge under the lease agreement.

6. As a result of the cancelled and invalidated insurance, BOCA terminated the leasing of the aircraft and exercised its contractual right to demand the immediate return of the aircraft with all necessary records. AirBridge, however, is refusing to recognize the termination of leasing of the aircraft and is refusing to return the records. It is instead demanding that BOCA authorize the aircraft to be flown from Hong Kong to Russia.

7. AirBridge already flew two other Boeing 747-8F aircraft owned by BOCA from China to Moscow on March 6, 2022, in breach of specific instructions from BOCA to ground those aircraft, and in one case, after the termination of the leasing of aircraft and consequent suspension of the certificate of airworthiness for the aircraft. To date, AirBridge has refused to release those aircraft to BOCA.

8. BOCA is entitled to immediate possession of the aircraft under the parties' lease agreement and under international treaty. Accordingly, BOCA seeks, among other things, an order of immediate possession of the aircraft under Article 20 of the CTC, a declaration that it is

entitled to immediate possession of the aircraft, and an order directing AirBridge to turn over all necessary aircraft documentation to allow BOCA to ferry the aircraft out of Hong Kong.

## PARTIES

9. Plaintiff BOCA is a corporation organized and existing under the laws of Singapore with an office at 8 Shenton Way, Singapore 068811, which is engaged in the aviation business principally with respect to the purchasing, selling and leasing of commercial aircraft.

10. Defendant AirBridge is a limited liability company organized and existing under the laws of the Russian Federation, with an office at 28B, Building 3, Mezhdunarodnoe Rd., Moscow 141411, which operates cargo airline services.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

12. This Court has personal jurisdiction over the parties pursuant to an Amended and Restated Aircraft Lease Agreement (60118) dated as of November 13, 2015 as amended and restated on March 30, 2017 (the "Lease Agreement") between BOCA as lessor and AirBridge as lessee in respect to the subject aircraft, in which the parties submitted to the jurisdiction of any federal courts sitting in New York County, agreed that any legal proceeding relating to the lease agreement may be brought in the such federal court and waived any objections to venue.

13. This Court also has personal jurisdiction over the parties pursuant to Article 42 of the CTC.

## FACTS

**A.     The Lease Agreement**

14.     BOCA is the owner of a Boeing Model 747-8F airframe bearing Manufacturer's Serial Number 60118 with four General Electric Model GEnx-2b67/P Engines (the "Aircraft"). The Aircraft is registered on the aircraft registry in Bermuda and bears Bermuda Registration Mark VQ-BFE.  In the Lease Agreement, the parties agreed that the Stipulated Loss Value for the Aircraft during the current rental period is $148,723,980.

15.     Of the four engines on the Aircraft, two are owned by BOCA. The other two engines are not owned by BOCA. BOCA had not yet verified the owner of these two engines, but which it understands might belong to AirBridge.

16.     On March 30, 2017, BOCA acquired ownership of the Aircraft and entered into an Assignment, Assumption and Amendment Agreement (the "Assignment Agreement") with respect to the Aircraft.  AirBridge is a party to the Assignment Agreement.  The Assignment Agreement incorporated the Lease Agreement with BOCA as the new lessor.

17.     Pursuant to the Lease Agreement, AirBridge agreed to lease the Aircraft from BOCA for a monthly rent of $1,200,000.

18.     Under the Lease Agreement, AirBridge agreed to maintain in full force and effect aircraft Hull War reinsurance in accordance with Lloyd's Aviation Underwriters Association Standard Policy Form.

19.     The Lease Agreement sets forth various events of default, including, but not limited to:

(i)     AirBridge fails to maintain in full force and effect any insurance required by Article 13 of the Lease (Article 18(b)); and

(ii) there shall be any change (or such change shall be enacted or made by notice or otherwise and shall be scheduled to become thereafter effective) in any Law (or in the interpretation thereof) of the jurisdiction of Lessee's incorporation or any jurisdiction in which Lessee conducts business which materially adversely affects (i) any of Lessor's material rights hereunder or under the Operative Documents; (ii) the validity, legality or perfection of any of the Operative Documents or Lessor's title to any Item; or (iii) materially adversely affects Lessee's ability to meet its obligations hereunder (Article 18(n)).

20. Under Section 19.02 of Lease Agreement, upon the occurrence of an event of default, and upon written demand by BOCA, AirBridge is required to "return promptly, the Aircraft and any part thereof (including the Aircraft Documentation) as BOCA may so demand to AirBridge or its order in the manner and condition required by, and otherwise in accordance with all provisions of, this Lease."

21. Section 19.02 of the Lease Agreement also gives BOCA the right to enter upon the premises where the Aircraft is located and take immediate possession of the Aircraft, including the Aircraft documentation as set forth in the Lease Agreement, including all logs, manuals and data, inspection and maintenance records, and other records with respect to the Aircraft (the "Aircraft Documentation"), and AirBridge waives any right to a hearing prior to such repossession.

22. Specifically, Section 19.02 provides that in the event of a default:

> "[BOCA] at its option and provided that [BOCA] has sent [AirBridge] a notice of termination, may enter upon the premises where the Aircraft or any part thereof is located and take immediate possession of and remove the same…by summary proceedings or otherwise, and [AirBridge] waives any right it may have under Law to a hearing prior to repossession of the Aircraft or any part thereof… all without liability accruing to [BOCA] for or by reason of such entry or taking of possession or removing whether for the restoration of reasonably necessary damage to property caused by such action or otherwise, and [AirBridge] is hereby

5

irrevocably by way of security for Lessee's obligations under this Lease appointed attorney for Lessee in causing the redelivery and will have all the powers and authorizations necessary for taking that action.

23. Section 19.02 of the Lease Agreement further provides that where, as here, an engine installed on the airframe of the Aircraft is not owned by BOCA, BOCA is authorized to take immediate possession and remove same, subject to all rights of the owner of such engine, and such engine shall be held for the account of any such owner.

24. Under Section 19.06 of the Lease Agreement, in the event of a default, BOCA has the right to "sell or re-lease or otherwise deal with the Aircraft Airframe, Engine or any Item of Equipment at such time and in such manner and on such terms as Lessor considers appropriate in its absolute discretion, free and clear of any interest of Lessee and without any duty to account to Lessee with respect to such action or inaction, as if this Lease had never been entered into."

25. In addition, pursuant to Section 19.05 of the Lease Agreement, AirBridge agreed to indemnify BOCA for all losses, expenses and costs incurred, directly or indirectly, by BOCA in connection with an event of default under the Lease Agreement, including all reasonable costs and expenses incurred in connection with recovering possession of the Aircraft, and damages incurred, including losses suffered by BOCA because of its inability to place the Aircraft on lease with another lessee.

**B.     The Cape Town Convention**

26. The CTC is an international treaty intended to standardize, among other things, transactions involving movable property.

27. Section 20.07 of the Lease Agreement provides that the parties shall be entitled to the maximum benefit of the rights and remedies contained within the CTC.

28. Section 19.07 of the Lease Agreement provides that "all types of relief and remedies under Article 20 of the CTC that are available to a lessor while final determination of Lessor's claims are pending shall be available to Lessor."

29. The CTC applies to any security agreement, conditional sale agreement or lease agreement with respect to an aircraft for which a Russian carrier is the debtor if that agreement was concluded on or after September 1, 2011.

30. The CTC is in effect in each of the Russian Federation, Bermuda and the United States.

31. Under Article 20 of the CTC, a creditor that "adduces evidence of default by the debtor" is entitled to obtain from a court "speedy relief" in the form of various remedies, including "possession, control or custody of the aircraft." Critically, a party is entitled to this relief under Article 20 of the CTC "pending a final determination by the court of its claim."

32. Article 20(4) of the CTC provides that the court may impose such terms as it considers necessary to protect a lessee or other interested party in implementing any order granting such relief. However, Article 20(5) of the CTC provides that contracting parties may agree in writing to exclude the application of Article 20(4). Under Section 19.07 of the Lease Agreement, the parties expressly exclude the application of CTC Article 20(4). Accordingly, BOCA should not be required to post an undertaking to exercise its remedies under the CTC.

C. **Sanctions Imposed Against Russia and Termination of the Leasing**

33. Commencing in late February, 2022, a number of governments around the world took a series of actions, including the imposition of sanctions that restrict the ability of air carriers certificated by the Russian Federation to perform their aircraft lease and/or finance obligations, and subsequent orders by the Russian Federation that have similar consequences.

34. On February 25, 2022, the Council of the European Union ("EU") issued Regulation 2022/328 (the "Regulation"), which requires lessors who are EU persons to terminate aircraft leases to Russian airlines, and prohibits EU insurers from providing insurance or reinsurance in respect of aircraft operated by Russian entities or which are used in Russia. See, Regulation Article 3C.

35. On March 1, 2022, BOCA received a number of notices of cancellation of the Hull War reinsurance policy with respect to the Aircraft and two other Boeing 747-8F aircraft leased to AirBridge (the "Other BOCA Aircraft"), effective March 7, 2022.

36. As a result of the notices of cancellation, the reinsurances for all three aircraft did not comply with the requirements of the respective lease agreements, and the presence of these aircraft in Russia after that date would constitute a breach the terms of the respective lease agreements.

37. On March 3, 2022, BOCA sent AirBridge a notice informing it in writing about the cancellation of Hull War reinsurances and requiring AirBridge to (a) ensure that the commercial operation of the Aircraft cease as soon as possible and (b) put the Aircraft into storage at a location outside Russia by not later than March 7, 2022. This notice made similar demands as to the Other BOCA Aircraft.

38. On March 5, 2022, BOCA sent a written notice to AirBridge demanding that AirBridge ground the Aircraft at its present location in Hong Kong. BOCA also demanded in that notice that the Other BOCA Aircraft be grounded in Shanghai, China and Zhengzhou, China where those aircraft were located.

39. On March 6, 2022, upon checking the FlightRadar, BOCA discovered that the Other BOCA Aircraft left China and were showing to be on a route to Moscow. This action by

AirBridge was taken notwithstanding the grounding notices issued on March 5, 2022 and notwithstanding the clear communication to AirBridge that they must not remove the Other BOCA Aircraft from the locations of Shanghai, China and Zhengzhou, China. From the website of Hong Kong International Airport, BOCA discovered that the Aircraft was scheduled to depart Hong Kong at 23.05 on March 6, 2022.

40. Later that day, BOCA sent a written notice to AirBridge (i) terminating its leasing of the Aircraft, effective immediately, as a result of the occurrence one or more events of default, including but not limited to, events of default under Article 18, Paragraphs (b) and (n) of the Lease Agreement, and (ii) demanding the immediate delivery of the Aircraft, all Aircraft Documentation and any parts that are not installed on the Aircraft to BOCA.

41. Upon termination of AirBridge's leasing of the Aircraft, the Bermuda Civil Aviation Authority deemed its Certificate of Airworthiness to no longer be in effect.

42. BOCA demanded return of the Aircraft and Aircraft Documentation, however, AirBridge has failed to return the Aircraft and the Aircraft Documentation.

43. BOCA made a similar demand as to the Other BOCA Aircraft.

**D.**     **The Aircraft Is At Risk of Being Expropriated to Russia**

44. Despite the grounding notice sent on 5 March 2022, AirBridge initiated Other BOCA Aircraft to be flown to Russia on 6 March 2022. One of the flights of the Other BOCA Aircraft (MSN 60117) to Russia from China was diverted by AirBridge to Dubai. BOCA attempted to ground that aircraft in Dubai based on the fact that the leasing of the aircraft had been terminated so AirBridge had no right to operate it and that the aircraft was flying illegally without a valid certificate of airworthiness. Nevertheless, the Other BOCA Aircraft bearing

manufacturer's serial number (MSN) 60117 managed to fly from Dubai to Moscow, Russia. MSN 60117 currently remains in Moscow.

45. Despite BOCA's notice demanding that AirBridge ground MSN 60119 at its location in Zhengzou, China, on March 6, 2022 AirBridge flew the aircraft to Moscow, Russia, where it is presently located.

46. During a phone call on March 8, 2022, AirBridge told BOCA that it would refuse to return the Other BOCA Aircraft to BOCA unless and until BOCA authorizes the Aircraft to leave Hong Kong and fly to Russia.

47. In a letter dated March 6, 2022, which was received by BOCA on March 8, 2022, AirBridge informed BOCA that Russian Authorities issued a document requiring prior authorization for any movement of any aircraft operated by a Russian carrier outside Russia.

E.   **The Aircraft Is At Risk In Hong Kong**

48. The Aircraft is currently situated at Hong Kong International Airport ("HKIA"), parked in an apron with minimal storage room.

49. HKIA is an operational airport not suitable for long-term storage of aircraft.

50. The atmospheric conditions in Hong Kong pose a substantial risk of environment damage to the Aircraft in long-term storage.

51. An aircraft storage facility exists in Pinal Airpark, Arizona where the storage conditions, capabilities and atmospheric conditions are suitable for long-term storage of aircraft.

52. The Aircraft is at risk of being damaged while it is grounded at HKIA.

## FIRST CAUSE OF ACTION
**(Breach of Contract)**

53. Plaintiff re-alleges and restates the preceding paragraphs as if fully set forth herein.

54. The Lease Agreement is a valid, binding contract.

55. AirBridge breached its obligations under the Lease Agreement by failing to maintain effective reinsurance required under the Lease Agreement and by refusing to return the Aircraft and Aircraft Documentation to BOCA upon written request to do so.

56. As a result of AirBridge's breach, BOCA has suffered damages including loss of rental income, costs and expenses incurred in connection with recovering possession of the Aircraft, and losses suffered as a result of BOCA's inability to place the Aircraft on lease with another lessee.

57. Accordingly, BOCA is entitled to damages in an amount to be determined at trial, plus interest thereon.

**SECOND CAUSE OF ACTION**
**(Order of Possession Under Article 20 of the CTC)**

58. Plaintiff re-alleges and restates the preceding paragraphs as if fully set forth herein.

59. Under Article 20 of the CTC, a lessor is entitled to order granting immediate possession, control or custody of an aircraft – pending a final determination by the court of its claim – upon a showing that the lessee is in default of the applicable lease agreement.

60. AirBridge is in default under the Lease Agreement.

61. Accordingly, BOCA is entitled to an immediate order of possession of the Aircraft.

62. Pursuant to Article 20(4) of the CTC and Section 19.07 of the Lease Agreement, BOCA shall not be required to post an undertaking to exercise its remedies under the CTC.

## THIRD CAUSE OF ACTION
**(Declaratory Judgment)**

63. Plaintiff re-alleges and restates the preceding paragraphs as if fully set forth herein.

64. Section 19.02 of the Lease Agreement provides that in the event of a default by AirBridge, BOCA has the right to retake immediate possession of the Aircraft, including the Aircraft documentation as set forth in the Lease Agreement, including all logs, manuals and data, inspection and maintenance records, and other records with respect to the Aircraft (the "Aircraft Documentation"), and AirBridge waives any right to a hearing prior to repossession.

65. Section 19.02 of the Lease Agreement also gives BOCA the right to enter upon the premises where the Aircraft is located and take immediate possession of the Aircraft, including the Aircraft documentation as set forth in the Lease Agreement, including all logs, manuals and data, inspection and maintenance records, and other records with respect to the Aircraft (the "Aircraft Documentation"), and AirBridge waives any right to a hearing prior to such repossession.

66. BOCA asserts AirBridge is in default of its obligations under the Lease Agreement, and that it is entitled to possession of the Aircraft and the Aircraft Documentation.

67. AirBridge refuses to return the Aircraft and the Aircraft Documentation to BOCA.

68. A justiciable controversy exists between BOCA and AirBridge as to what the parties' rights are under the Lease Agreement.

69. BOCA is entitled to a judgment declaring and determining that BOCA is entitled to recover immediate possession of the Aircraft and the Aircraft Documentation and to sell or re-lease the Aircraft.

## FOURTH CAUSE OF ACTION
### (Specific Performance)

70. Plaintiff re-alleges and restates the preceding paragraphs as if fully set forth herein.

71. Under Section 19.02 of Lease Agreement, upon the occurrence of an event of default, and upon written demand by BOCA, AirBridge is required to "return promptly, the Aircraft and any part thereof (including the Aircraft Documentation) as BOCA may so demand to AirBridge or its order in the manner and condition required by, and otherwise in accordance with all provisions of, this Lease."

72. AirBridge has refused to return the Aircraft or the Aircraft Documentation, despite repeated demand.

73. AirBridge also refuses to recognize the termination of the leasing of by BOCA and is making efforts to gain unlawful possession of the Aircraft.

74. BOCA has fully performed all of its obligations under the Lease Agreement.

75. It is within AirBridge's power to turn over the Aircraft Documentation and cooperate in taking actions to effectuate the transfer of possession of the Aircraft to BOCA.

76. There is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, BOC Aviation Limited respectfully requests that the Court grant it judgment as follows:

**(a)** as to the First Cause of Action, awarding money damages against AirBridge in an amount to be determined at trial, together with interest;

**(b)** as to the Second Cause of Action, an Order granting immediate possession of the Aircraft to BOCA;

**(c)** as to the Third Cause of Action, a Judgment against AirBridge declaring and determining that BOCA is entitled to recover control and possession of the Aircraft and the Aircraft Documentation; and

**(d)** on the Fourth Cause of Action, directing AirBridge to specifically perform and abide by the Lease Agreement by turning over the Aircraft Documentation and taking all actions necessary to effectuate a transfer of the Aircraft to BOCA;

**(e)** for the costs of this action; and

**(f)** for such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 14, 2022

SMITH, GAMBRELL & RUSSELL, LLP

By: /s/ John G. McCarthy
John G. McCarthy
Edward J. Heppt
*Attorneys for Plaintiff*
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel: (212) 907-9700
jmccarthy@sgrlaw.com
eheppt@sgrlaw.com

## VERIFICATION

DAVID WALTON, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury under the laws of the United States of America that he is the Chief Operating Officer of BOC Aviation Limited ("BOCA"); that he has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to the best of his knowledge, information and belief; and the sources of his information and the grounds of his belief are his personal involvement, conversations with representatives of BOCA, and review of relevant documents and his files.

Executed on March 14, 2022

_____
David Walton