UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
BOC AVIATION LIMITED,                                    :

                          Plaintiff,        Case No. 22 Civ. 2070 (LJL)

                                        :

     - against -                                             :

AIRBRIDGECARGO AIRLINES, LLC, and
VOLGA-DNEPR LOGISTICS B.V.,                              :

                         Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO HOLD DEFENDANTS IN CONTEMPT OF THE NOVEMBER PRELIMINARY INJUNCTION AND THE MARCH *EX PARTE* ORDER

SMITH, GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel: (212) 907-9700
Fax: (212) 907-9800
*Attorneys for Plaintiff*

*Of Counsel*
     John G. McCarthy
     Edward J. Heppt

## **TABLE OF CONTENTS**

STATEMENT OF FACTS ........................................................................................................ 2

    A.  The November Preliminary Injunction. ........................................................................ 2

    B.  The March Order.......................................................................................................... 5

ARGUMENT ........................................................................................................................ 7

    POINT I      DEFENDANTS ARE IN CONTEMPT OF THE COURT'S
                 ORDERS............................................................................................ 7

    POINT II      DEFENDANTS SHOULD BE SANCTIONED TO COMPEL
                 COMPLIANCE................................................................................ 10

    POINT III   BOCA SHOULD BE AWARDED ITS DAMAGES,
                 ATTORNEYS' FEES AND COSTS ............................................ 12

CONCLUSION.................................................................................................................... 13

## TABLE OF AUTHORITIES

Cases

*CBS Broad. Inc. v. FilmOn.com, Inc.*,
   814 F.3d 91 (2d Cir. 2016) ................................................................. 8, 12

*Citigroup Inc. v. Sayeg*,
   No. 21 Civ. 10413 (JPC), 2022 WL 596073 (S.D.N.Y. February 24, 2022) .......................... 12

*King v. Allied Vision, Ltd.*,
   65 F.3d 1051 (2d Cir. 1995) ............................................................... 8

*Medina v. Buther*,
   No. 15 Civ. 1955 (LAP), 2019 WL 581270 (S.D.N.Y. Feb. 13, 2019).......................... 8, 9, 10

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ........................................................... 7, 8, 10

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
   No. 99 Civ. 10175 (KMW), 2021 WL 3418475 (S.D.N.Y. Aug. 5, 2021) ................ 10, 12, 13

*Powell v. Ward*,
   487 F. Supp. 917 (S.D.N.Y. 1980) ......................................................... 9

*Telenor Mobile Commc'ns AS v. Storm LLC*,
   587 F. Supp. 2d 594 (S.D.N.Y. 2008) ................................................. 10, 11

*Weitzman v. Stein*,
   98 F.3d 717 (2d Cir. 1996) ......................................................... 10, 12, 13

Since March 2022, Defendants AirBridgeCargo Airlines, LLC ("AirBridge") and Volga-Dnepr Logistics B.V. ("Volga-Dnepr") (together, "Defendants") have wrongfully been in possession of two airframes and ten engines owned by plaintiff BOC Aviation Limited ("BOCA"), with a value in excess of $300 million.  Defendants flew BOCA's property to Russia in violation of international law, after receiving grounding notices, and after receiving notices of termination of the leasing of the aircraft.  On November 16, 2022, this Court orally issued a preliminary injunction requiring Defendants, by November 21, 2022, to convey title to two replacement engines to BOCA, as required under the parties' lease agreement.  The oral order was also reduced to a written order issue by the Court on November 21, 2022.  On March 14, 2022, this Court granted BOCA an order of immediate possession of MSN 60118 and also ordered AirBridge to turnover to BOCA all Aircraft Documentation for that aircraft.

The terms of the orders at issue are clear and unambiguous.  It cannot be disputed that Defendants were timely notified about those terms.  Nonetheless, Defendants failed to comply with the Court's orders.  Instead of delivering title to two replacement engines, Defendants delivered two self-serving letters that continue to make the same groundless assertions that this Court soundly rejected last week.  With respect to the March order, AirBridge has not turned over any hard copy Aircraft Documentation related to MSN 60118 or required statements that no accidents or incidents occurred, despite repeated requests to do so.  By refusing to comply with this Court's orders, Defendants are frustrating BOCA's ability to re-lease MSN 60118.  As this Court recognized last week, without title to replacement engines, BOCA will suffer irreparable harm.  Also, without all the Aircraft Documentation for MSN 60118, BOCA will be forced to incur increased costs and expenses in obtaining replacement parts to place the aircraft in delivery condition.

Accordingly, BOCA seeks an order requiring Defendants to pay to it daily fines until they comply with the Court's orders and for the damages incurred by BOCA resulting from the contempt and awarding BOCA its attorneys' fees and costs incurred in bringing this application.

## STATEMENT OF FACTS

### A.   The November Preliminary Injunction.

On November 16, 2022, the Court issued its order from the bench granting BOCA's motion for a preliminary injunction (the "Oral Order").  (See the accompanying Declaration of John G. McCarthy executed November 23, 2022 (the "McCarthy Decl."), Ex. A.)  The Court determined, among other things, that an Event of Loss had occurred with respect to BOCA's engines in Defendants' possession in Russia, that Defendants failed to provide replacement engines as soon as practicable, and that BOCA would suffer irreparable harm if an injunction did not issue. (*Id*. at 11-15.)  The Court ordered Defendants, on or before November 21, 2022, to "deliver title to two Engines, made by the Engine Manufacturer and of the same or an improved model and suitable for installation and use on the Airframe, which obligation may be satisfied by delivery of Title to Rainbow Engines 2 and 3."  (*Id*. at 18:2-6.)  The Court further held that after Defendants comply with the foregoing obligations, BOCA is required to transfer title to the two BOCA Engines, subject to obtaining all regulatory approval which it must pursue as expeditiously as possible. (*Id*. at 18-19.)

In its Oral Order, the Court rejected Defendants' arguments that the board of directors of Rainbow Leasing Limited ("Rainbow") required additional time to convey title to BOCA. Specifically, the Court held that Defendants "do not offer any testimony from anyone at Rainbow that Rainbow could not have agreed to provide the engines earlier. Nor do Defendants conclusory assertions provide any discrete reason for delay, particularly when it is undisputed that VD is the indirect majority owner of Rainbow." (McCarthy Decl. Ex. A at 13:10-15.)  The

2

Court ordered BOCA to post a bond of US$2 Million "based on the notion that damages here, if the injunction turns out to have been improvidently granted, will be based purely on the delay in acquiring title." (*Id*. at 17:20-25.)  After the Oral Order, the Court stated as follows:

> That's the Court's ruling. If the Plaintiff needs a written form of preliminary injunction to be entered on the record, Plaintiff may submit such a form by the end of the day tomorrow, after meeting and conferring with the Defendant to try to iron out any differences between the parties.

(*Id*. at 18:7-9.)  The Court also confirmed that it was ordering BOCA to convey title to the BOCA Engines to AirBridge only after receiving the necessary regulatory approvals.  (*Id*. at 18-19.)  Counsel for Defendants was present throughout the November 16 proceeding (*id*. at 1 & 19) and the Court gave him an opportunity to seek clarification of the Oral Order.  (*Id*. at 19.)  The proceeding began at 9:03 a.m. (*id*. at 1) and lasted approximately a half hour.  (McCarthy Decl., ¶ 3.)

After the Court issued its Oral Order, the parties met and conferred with respect to the submission of a written form of order to be entered on the record.  (McCarthy Decl., ¶ 4.)  On November 18, 2022, the required US$2 million undertaking was filed.  (Dkt. No. 68.)  Later that day, the Court issued an order resolving two disputes between the parties as to the language of the written form of the preliminary injunction.  (Dkt. No. 69.)  On November 21, 2022, the Court entered a written preliminary injunction order (the "Written Order") that tracked the Oral Order in all material respects except (with BOCA's consent) it allowed compliance by delivery of a certified scan of the bills of sale followed by delivery of the originals to a courier the next day. (Dkt. No. 70.)  (The Oral Order and the Written Order are collectively referred to herein as the "November Preliminary Injunction.")  The Written Order also required Defendants to furnish BOCA's attorney with "certified electronic copies of back-to-birth bills of sale relating to the Replacement Engines and all logs, manuals and data, inspection, modification, service,

3

maintenance, overhaul and other records, including non-incident statements for all parts relating to the Replacement Engines as is required for return of an Engine under the 60118 Lease Agreement with the originals to be delivered to Mr. McCarthy by December 5, 2022." (*Id.*)

Defendants have not appealed the November Preliminary Injunction or sought a modification or stay thereof.  (McCarthy Decl., ¶ 4.)  On November 21, 2022, Defendants provided BOCA a November 18, 2022 letter purportedly from Volga-Dnepr to Rainbow, and Rainbow's purported response letter dated the same day.  (*Id.*, Exs. B, C.)

In its letter to Rainbow, Volga-Dnepr states that the transfer of title to replacement engines located outside of Russia "should not violate the sanctions imposed on Russia nor the Russian export restrictions imposed upon the aircraft related items at this time." (McCarthy Decl. Ex. B at 2.)  Volga-Dnepr "recommended" that its subsidiary transfer title to the replacement engines to BOCA on or before November 21, 2022.  (*Id.*)  Volga-Dnepr has not explained why it waited two days after the Oral Order to inform Rainbow.  (McCarthy Decl., ¶ 6.)

In response, Rainbow claims that its directors "commenced the process of reviewing the order," but that "due to our recent appointment Rainbow needs more time to review the provided information and documents as well as to discover the location of storage of the originals of the documents for the Rainbow Engine 2 and Rainbow Engine 3."  (McCarthy Decl. Ex. C.)  Rainbow states that "the title transfer to the Rainbow Engine 2 and Rainbow Engine 3 would unlikely be performed until after 21 November 2022." (*Id.*)  Aside from the purported need for additional time to "review information and documents," Rainbow states that it will not transfer title to Rainbow Engine 2 and Rainbow Engine 3 "until Plaintiff obtains the required approvals from regulatory authorities to transfer title to the BOCA Engines." (*Id.*)

4

Rainbow's letter is signed by "Alexander Dammer, Director." (McCarthy Decl., Ex. C.) Mr. Dammer's LinkedIn profile reveals that he has been an employee of the Volga-Dnepr group for the past thirty-one years and ten months. (Declaration of Brian Devine, executed on November 23, 2022 (the "Devine Decl."), Ex. B.) According to that profile, Mr. Dammer is currently a "Purchase Director" at Aircraft Maintenance and Engineering Service GmbH ("AMTES GmbH"). (*Id*.) Volga-Dnepr's website lists AMTES GmbH as a "Volga-Dnepr Technics Sub-group" included among the "Volga-Dnepr Group Compan[ies]." (*Id*., Ex. A.) On its website, AMTES GmbH describes itself as a "Volga-Dnepr Group company." (*Id*., Ex. C.) Finally, Volga-Dnepr's website reveals that it was founded in 1990, which means that Mr. Dammer has worked for the group of companies for almost its entire existence. (*Id*., Ex. D.)

**B.**     **The March Order.**

On March 14, 2022, this Court entered an *Ex Parte* Order For Immediate Possession Of Aircraft And Injunction (Dkt. Nos. 12 & 26) (the "March Order")[1] finding AirBridge in default of the Aircraft Lease Agreement (60118), dated as of November 13, 2015 as amended and restated (the "60118 Lease Agreement") for failing to maintain the required insurance on the Aircraft and granting BOCA immediate possession of MSN 60118. The March 14 Order directed AirBridge to, among other things, "immediately TURNOVER to BOCA all Aircraft Documentation including those necessary for it to obtain a Certificate of Airworthiness to ferry the Aircraft from Hong Kong to Arizona." (*Id*. at 3.) The 60118 Lease Agreement contains provisions with respect to the Aircraft Documentation that AirBridge was required to provide to

---

[1] BOCA commenced this action on March 14, 2022 and the March Order was issued late that day but was incorrectly dated March 13, 2022 in the signature block. The docket indicates that it was filed under seal as Dkt. No. 12 and assigned Dkt. No. 26 when it was unsealed on March 25, 2022. In some of its papers, BOCA has inadvertently referred to the March Order as Dkt. No. 4, which was the number assigned to the proposed order, and which number appears on the copy of the March Order provided to BOCA by the Court on March 14, 2022.

BOCA upon return of MSN 60118.  (Declaration of Nikolay Sarandiev, executed on November

23, 2022 (the "Sarandiev Decl."), ¶ 7; *see also* Dkt. No. 5-1 at 92-93; 149-152; 182-185.)

Aircraft operators must retain the hard copies of certain Aircraft Documentation.  (Sarandiev

Dec., ¶ 6.)

The March 14 Order was served on AirBridge on March 16, 2022, by delivering a copy

to Corporation Service Company, AirBridge's process agent in New York.  (Dkt. No. 22.)

AirBridge was also served with the summons and complaint at the same time.  (Dkt. No. 22.)  On

April 4, 2022, AirBridge appeared in this action via counsel.  (Dkt. No. 27.)  AirBridge filed its

answer on September 9, 2022.  (Dkt. No. 39.)  AirBridge's counterclaim notes that "[t]he

Aircraft, including the engines, were repossessed by BOCA pursuant to an order of this Court."

(*Id*., at 11, ¶ 19.)  In response to BOCA's amended complaint, Defendants admitted that the

Court entered the March Order "ordering AirBridge to turn over all of the aircraft

documentation."  (*Compare* Dkt. No. 41, ¶ 63 *with* Dkt. No. 51, ¶ 63.)

In late March 2022, AirBridge prepared three Lessee's statements of no accidents or

incidents – one for each of the two BOCA-owned engines installed on MSN 60118 at the time of

repossession (ESN 959448 and ESN 959447) and another covering the Airframe, auxiliary

power unit, and landing gears.  (Sarandiev Dec., ¶ 9, Exs. A & B.)  AirBridge has nevertheless

failed to provide BOCA with signed copies of them.  (*Id*.)  BOCA has been communicating with

Defendants for months to obtain the hard copies of the Aircraft Documentation for MSN 60118

and the Non-Incident Statements.  (*Id*., ¶ 10.)  AirBridge has nonetheless failed to turnover to

BOCA any hard copy records for MSN 60118 and has not signed the required Non-Incident

Statements for the Airframe or engines.  (*Id*.)  The new lessee for MSN 60118 has requested the

hard copies of the Aircraft Documentation for MSN 60118, but BOCA is unable to provide it absent Defendants' compliance with the Court's order and its lease obligations. (*Id*.)

AirBridge's failure to deliver even certified scans of the Non-Incident Statements is now causing BOCA to incur additional expenses to prepare MSN 60118 for delivery. (Sarandiev Dec., ¶ 11.) Ever since BOCA signed a new lease last month for MSN 60118, Ascent Aviation Services has been conducting tests on MSN 60118 to determine whether various parts and components are serviceable and in the required delivery condition. (*Id*.) As part of this process, Ascent Aviation Services has advised BOCA about the existence of Airframe components that are not serviceable and thus need to be replaced. (*Id*.) Normally, BOCA would enter into a transaction with a component supplier to exchange the unserviceable parts for the replacement parts and be able to pay a substantially discounted price in the form of an exchange fee, and for the cost for repairing the unserviceable component. (*Id*., ¶ 12.) The exchange pricing is not possible without certified electronic copies of the Non-Incident Statements from AirBridge and BOCA is being forced to pay full price for the replacement components and be left with removed components that are worthless. (*Id*., ¶¶ 13-14.) As described in greater detail by Mr. Sarandiev, the lack of the Non-Incident Statements has already damaged BOCA, will cost BOCA at least US$300,000, and could eventually cost BOCA up to US$3 Million. (*Id*., ¶¶ 13-15.)

## ARGUMENT

## POINT I

## DEFENDANTS ARE IN CONTEMPT OF THE COURT'S ORDERS

"A party who violates an injunction entered by the district court faces the threat of both civil and criminal contempt." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004). "A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of

7

noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (*citing Paramedics*, 369 F.3d at 655). There is no requirement that the party acts willfully to be held in civil contempt. *Medina v. Buther*, No. 15 Civ. 1955 (LAP), 2019 WL 581270, at *25 (S.D.N.Y. Feb. 13, 2019) (citing *Paramedics*, 369 F.3d at 655).

First, the November Preliminary Injunction and the March Order are clear and unambiguous. An order is clear and unambiguous when it "leaves no uncertainty in the minds of those to whom it is addressed" and allows them to ascertain from the order precisely what acts are required. *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *see also Medina*, 2019 WL 581270, at *25. The November Injunction was clear about delivery of the bills of sale to BOCA by November 21, 2022. Defendants had an opportunity to clarify the meaning of the Oral Order and did not do so. The parties met and conferred with respect to the terms of the Written Order, and Defendants have never claimed that any aspect of the November Preliminary Injunction was unclear. The March Order required AirBridge to turnover to BOCA all Aircraft Documentation for MSN 60118. The orders precisely describe the conduct that they require and Defendants' conduct indicates that they understood clearly their obligations thereunder.

Second, it is clear that Defendants have violated the orders. Defendants have failed to transfer to BOCA title to any replacement engines. AirBridge has failed to provide the hard copy Aircraft Documentation for MSN 60118 and the Non-Incident Statements (either originals or certified electronic copies). No question exists that they have violated the orders.

Third, Defendants have not attempted to comply with the orders in a reasonable manner. A party is "'not reasonably diligent' when he or she ignores the order or takes only superficial

actions that "'strain both the language and intent of the order.'" *Medina*, 2019 WL 581270, at

*25; *Powell v. Ward*, 487 F. Supp. 917, 933-34 (S.D.N.Y. 1980).

    With respect to the November Preliminary Injunction, Defendants have offered a single

letter dated November 18, 2022 (two days after the Court issued the Oral Order) in which Volga-

Dnepr "recommends" that its subsidiary Rainbow convey title to replacement engines to BOCA.

(McCarthy Decl. Ex. B.)  Defendants have also produced a "response letter" from Rainbow

dated November 18, 2022, that is signed by a thirty-year employee of Volga-Dnepr who purports

to now be a director of Rainbow.  (*Id*., Ex. C.)  The response letter simply repeats, in a

conclusory manner, the arguments previously asserted by Defendants that were already rejected

by this Court.

    For example, Rainbow claims that it "would like to evaluate more facts and information

in relation to the Rainbow Engine 1 damage purportedly incurred during the period when

Plaintiff controlled MSN 60118 aircraft with Rainbow's asset."  (McCarthy Decl. Ex. C.)  This

argument was already raised by Defendants in opposition to BOCA's motion and was rejected by

this Court because "that assessment is immaterial as to whether Defendants can swap title to

Rainbow Engines 2 and 3 now." (*Id*., Ex. A at 16:4-6.)  Rainbow also repeats the argument that

its board "needs additional time to review the documents" necessary to approve the conveyance

of title. (*Id*., Ex. C.) This argument was already rejected by the Court because "[Defendants] also

do not offer any testimony from anyone at Rainbow that Rainbow could not have agreed to

provide the engines earlier.  Nor do Defendants' conclusory assertions provide any discrete

reason for delay, particularly when it is undisputed that VD is the indirect majority owner of

Rainbow." (*Id*. at 13:10-15.)  Last, Rainbow refuses to convey title until BOCA obtains all

regulatory approvals. (McCarthy Decl., Ex. C)  This, too, was raised by Defendants and rejected by this Court.  (See, *Id*., Ex. A at 16:19-25; Dkt. No. 70 at 3.)

While AirBridge made some efforts to comply with the March Order, it has failed in two respects.  AirBridge has failed to return any of the hard copy Aircraft Documentation to BOCA and has not executed and delivered the Non-Incident Statements to BOCA.

Accordingly, Defendants are in contempt of the November Preliminary Injunction and the March Order.

## POINT II

## DEFENDANTS SHOULD BE SANCTIONED TO COMPEL COMPLIANCE

Civil contempt sanctions are imposed for two purposes: "secur[ing] future compliance with court orders" and "compensat[ing] the party that has been wronged." *Paramedics*, 369 F.3d at 657. This Court is vested with wide discretion in fashioning a remedy to encourage future compliance.  *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996); *Medina*, 2019 WL 581270, at *26; *see also Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 621 (S.D.N.Y. 2008), *aff'd*, 351 F. App'x 467 (2d Cir. 2009) (imposing a daily fine of $100,000, doubling every 30 days, and noting that "[i]n creating an appropriate remedy, the Court should consider (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him.") (internal quotations and citations omitted); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 Civ. 10175 (KMW), 2021 WL 3418475, at *16 (S.D.N.Y. Aug. 5, 2021) ("A coercive fine must be substantial enough to make it more economical for a contemnor to comply than not to comply.")

BOCA faces irreparable harm if Defendants do not comply with the November 21 Order because it will lose rental income of $7.2 million that it will likely not be able to recover from

10

Defendants. (See, Dkt. No. 60 at ¶ 25; McCarthy Decl. Ex. A at 14:10-21.)  BOCA will also

suffer escalating damages that could reach US$3 million unless AirBridge provides certified

electronic copies of the executed Non-Incident Statements to BOCA in the next few weeks as

well as all hard copy Aircraft Documentation, as required by the March Order. (Sarandiev Decl.,

¶¶ 11-15.)

    Accordingly, with respect to the November Preliminary Injunction, the Court should

enter an order requiring Defendants to pay to BOCA a fine starting at $100,000 for each day of

noncompliance with the daily fine increasing by $50,000 each day until compliance is achieved.[2]

With respect to delivery of a certified electronic copy of the Non-Incident Statements, the Court

should enter an order requiring Defendants to pay to BOCA a fine starting at $30,000 for each

day of noncompliance with the daily fine doubling each week until compliance is achieved.[3]

These amounts are reasonably tailored to ensure compliance.  Defendants are in possession of

hundreds of millions of dollars of BOCA's property (Dkt. No. 47 at ¶ 20).  Defendants' attorney

claims that "under Russian accounting standards, [Defendants] don't even intend to take a loss in

2022 because of the cuts that they were able to make, because of the contracts within Asia and

Russia that they've been able to maintain, and because of the lucrative first three months or two

months of 2022." (McCarthy Decl. Ex. A at 2:24-3:3.)  The requested sanctions constitute an

appropriate remedy to ensure probable compliance with the Court's orders. *See Telenor*, 587 F.

---

[2] The first daily fine would be $100,000, the second daily fine would be $150,000 for a cumulative total of $250,000 on day two.  On day seven of non-compliance, the daily fine would be $400,000 and the accumulated fines would be $1.75 Million.  By day ten, the fine is US$550,000 per day and the total would be $3.25 million.  By day fourteen, the fine would be US$750,000 per day and the total would be US$5.95 million.

[3] The first seven daily fines would be US$30,000 for a total of US$210,000.  On day eight of non-compliance, the daily fine would be increased to US$60,000.  By day fifteen, the fine would be US$120,000 per day and the accumulated total would be US$750,000.

Supp. 2d at 621 ("an initial contempt sanction of $100,000 per day, doubling to $200,000 per day thirty days thereafter, and to $400,000 per day thirty days after that, and continuing to double every thirty days until compliance is achieved, is an appropriate remedy to ensure probable compliance with this Court's orders"); *see also Citigroup Inc. v. Sayeg,* No. 21 Civ. 10413 (JPC), 2022 WL 596073 (S.D.N.Y. Feb. 24, 2022) (ordering sanctions starting at $5,000 per day from March 4, 2022 to March 13, 2022; $10,000 per day from March 14, 2022 to March 23, 2022; and $15,000 per day from March 24, 2022 to April 2, 2022); *CBS Broad. Inc.,* 814 F.3d at 101-04 (affirming sanctions of $10,000 per day).

## POINT III

## BOCA SHOULD BE AWARDED ITS DAMAGES, ATTORNEYS' FEES AND COSTS

This Court should award BOCA its damages, attorneys' fees and costs incurred in bringing the instant application. *See, Weitzman*, 98 F.3d at 719 (the decision to award fees on a contempt motion rests in the court's equitable discretion.)  Although "the Second Circuit has not decided whether a finding of willfulness or bad faith is required before a court may order attorneys' fees as a sanction for violating a court order," such a finding strongly supports granting attorney's fees and costs." *Patsy's Brand,* 2021 WL 3418475, at *17.  "A willful contempt is one where the contemnor had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." *Id.*

Defendants had notice of this Court's orders.  They did not appeal either order or seek to have them modified or stayed.  They have not taken reasonable steps to comply with either order. As set forth above, unless Defendants comply with the Court's orders, BOCA will be forced to incur substantial costs and fees for replacement parts that could total $US3 million and will lose rental income of $7.2 million.  Accordingly, BOCA should be awarded its damages, reasonable fees and costs incurred in bringing this motion and seeking to enforce the Court's orders. *See*

*Patsy's Brand*, 2021 WL 3418475, at *17 (awarding attorneys' fees where the contemnor "had notice of the Injunction; failed to seek to modify it before [acting in violation of the Injunction]; and did not make a good faith effort to comply with the Injunction"); *see also Weitzman*, 98 F.3d at 720 (holding it was error to deny attorneys' fees where none of the proceedings "would have been necessary if [the contemnor] had respected the [court's] order.")

## <u>CONCLUSION</u>

For all the foregoing reasons and those set forth in the accompanying declarations, it is respectfully requested the Court grant BOCA's motion in all respects, and grant such additional and further relief as it deems just and proper.

Dated: New York, New York
November 23, 2022

SMITH, GAMBRELL & RUSSELL, LLP

By: /s/ *John G. McCarthy*
John G. McCarthy
Edward J. Heppt
*Attorneys for Plaintiff*
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel: (212) 907-9700
jmcarthy@sgrlaw.com
eheppt@sgrlaw.com

13