UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
BOC AVIATION LIMITED,                          :
                                               :
                        Plaintiff,             :   Case No. 22-civ-2070 (LJL)
                                               :
- against –                                    :
                                               :
AIRBRIDGECARGO AIRLINES, LLC, and              :
VOLGA-DNEPR LOGISTICS B.V.,                    :
                                               :
                        Defendants.            :
------------------------------------------------------------X
```

### DEFENDANTS' PROPOSED FINDINGS OF FACT
### AND CONCLUSIONS OF LAW

Defendants Volga-Dnepr Logistics B.V. ("Volga-Dnepr") and AirBridgeCargo Airlines, LLC ("AirBridge" and, jointly with Volga-Dnepr, "Defendants"), through their undersigned counsel, submit these proposed findings of fact and conclusions of law in accordance with rule 6.B.iv of the Court's Individual Practices in Civil Cases.[1]

### PROPOSED FINDING OF FACT AND CONCLUSIONS OF LAW

**I.    PROPOSED FINDING NO. 1: THERE IS NO EVENT OF LOSS**

The evidence presented does not support a finding of an "Event of Loss" as that term is defined in the Lease Agreements. Plaintiff is therefore not entitled to replacement engines for Aircraft MSN 60118. "It is well settled that the interpretation of lease agreements is subject to the same laws applicable to other contracts." *Gen. Elec. Cap. Corp. v. Bestway Tour & Travel, Inc.*, 2010 WL 3185554, at *7 (S.D.N.Y. Aug. 6, 2010). The "job of [contract] construction [is] particularly easy" where "[a]ll of the key contractual terms, the ones that require interpretation,

---

[1] Capitalized terms used herein that are not defined have the same meaning as in the Verified Amended Complaint, dated September 30, 2022 (ECF No. 41).

are defined terms—that is, the parties set forth exactly what they meant in the body of the contract itself." *Quintel Commc'ns, Inc. v. Fed. Transtel, Inc.*, 142 F. Supp. 2d 476, 482 (S.D.N.Y. 2001). Indeed, "[u]nder New York law, when a term is expressly defined in a contract, the agreed-to definition generally supersedes any other meaning of the term." *Dannhauser v. TSG Reporting, Inc.*, 2019 WL 2950142, at *9 (S.D.N.Y. June 21, 2019).

Section 12.02 of the Lease Agreement governing MSN 60118 provides that, upon the occurrence of an Event of Loss with respect to an Engine, as defined therein, Defendants "shall replace such Engine as soon as practicable after the occurrence of such Event of Loss by duly conveying to Lessor as a replacement for said Engine, title to another engine made by the Engine Manufacturer and of the same or an improved model and suitable for installation and use on the Airframe . . . ." *See* Plaintiffs' Exhibits 3 . Section 1.01 of the Lease Agreements defines "Event of Loss"[2] to include the following three scenarios:

---

[2] The full definition of "Event of Loss" is:

> "Event of Loss" with respect to any Item of Equipment means any of the following events with respect to such Item: (a) loss of such Item of Equipment or the use thereof due to disappearance for a period in excess of sixty (60) days (or such shorter period ending on the date on which an insurance settlement has been reached on the basis of a total loss); (b) theft, destruction, damage beyond repair or rendering of such Item permanently unfit for normal use for any reason whatsoever; (c) any damage to such Item which results in an insurance settlement with respect to such Item on the basis of an actual or constructive total loss; (d) the condemnation, confiscation or seizure of, or requisition of title to, or requisition of use (for a period in excess of sixty (60) days, but in any event no longer than the last day of the Term) of, such Item by any Government Body; or (e) as a result of any rule, regulation, order or other action by any Aviation Authority, or other Government Body having jurisdiction, the use of such Item in the normal course of air transportation of persons or property shall have been prohibited for a period of more than six (6) months. An Event of Loss with respect to the Aircraft shall be deemed to have occurred if an Event of Loss occurs with respect to the Airframe.

      (1) "theft, destruction, damage beyond repair or rendering of such Item permanently unfit for normal use for any reason whatsoever";

      (2) "the condemnation, confiscation or seizure of, or requisition of title to, or requisition of use (for a period in excess of sixty (60) days, but in any event no longer than the last day of the Term) of, such Item by any Government Body."

      (3) as a result of any rule, regulation, order or other action by any Aviation Authority, or other Government Body having jurisdiction, the use of such Item in the normal course of air transportation of persons or property shall have been prohibited for a period of more than six (6) months.

Notably absent from the definition of an Event of Loss, is an order of the Government restricting the permissible location of the Engines. The governing language in the Lease Agreements is unambiguous and the parties do not dispute its enforceability.

While Plaintiff presented evidence that the MSN 60118 Engines remain in Russia, *see* Stipulated Facts para. 41, Plaintiff failed to present evidence sufficient to justify a finding of an Event of Loss under any of the three sections outlined above. No evidence was presented to support a finding that the Engines have been condemned, confiscated, seized, or requisitioned in any way by the Russian government. Government Decree 311 only limits the transportation of the Engines out of Russia and does nothing beyond that to suggest that the Russian government has otherwise limited use of or taken control of the Engines. *See* Defense Exhibit N. There is therefore no Event of Loss under the Lease Agreement and Plaintiff is therefore not entitled to any of the remedies it seeks pursuant thereto.

## II.    PROPOSED FINDING NO. 2: DEFENDANTS' PERFORMANCE UNDER THE LEASE AGREEMENTS WAS IMPOSSIBLE

While the parties do not dispute that an Event of Default occurred under the Lease Agreements, and even if and Event of Loss had been established, Defendants are not liable for such breach because their performance was – and continues to be - impossible.  Under the well-established doctrine of impossibility, a party is excused from performance under a contract where "performance is made impracticable without [its] fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." *United States v. Winstar*, 518 U.S. 839, 904 (1996) (citing Restatement (Second) of Contracts §261).  Courts in the Second Circuit have long held that, pursuant to the impossibility doctrine, "war preclude[s] the performance" of contracts whose performance is impossible due to circumstances of the war.  *Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F. Supp. 2d 781, 800 (S.D.N.Y. 2008) (summary judgment granted dismissing contract claim); *Alexewicz v. Gen. Aniline & Film Corp.*, 43 N.Y.S.2d 713, 718 (Sup. Ct. Broome Cty. 1943) (same).  The evidence establishes that the Russian-Ukrainian war (the "War")[3], the resulting sanctions by the United States and the European Union, and directives from the Russian government made performance of the Lease Agreement impossible for Defendants.

### A.   There Is No Dispute That Defendants Were, And Still Are, Unable To Maintain The Requisite Insurance Under The Lease Agreements

All evidence presented confirms that the War and the resulting sanctions by the European Union caused the cancellation of the Aircraft's insurance policies.  See Stip. of Facts ¶ 29.  Due to the regulations issued by Russia, Defendants are unable to purchase other acceptable insurance as required under the Lease Agreements.  See Defense Exhibit N; Walton Deposition.

---

[3] The Court may take judicial notice of the fact of the war and the related sanctions.

**B. There Is No Dispute That Russia Required The Aircraft To Return To Russia After The Cancellation Of The Aircraft's Insurance In March 2022**

There is also no dispute that in March 2022, a Russian government directive required Defendants to return the Aircraft to Russia, and that, in compliance with this order, Defendants flew MSN 60117 and MSN 60119 to Russia where they are currently located. *See* Walton Dep. Tr. 144-145.

**C. It Is Impossible For Defendants To Remove The Aircraft, The MSN 60118 Engines And The Original Records From Russia**

It has been – and remains – impossible for Defendants to remove the Aircraft, the MSN 60118 Engines, and the Original Records from Russia due to the ongoing War and the sanctions and regulations imposed thereby. Decree Number 311 of the Government of the Russian Federation dated November 9, 2022 imposes a prohibition on the export of aircraft and aviation goods (including the Original Records being an integral part of the Aircraft in accordance with the definition set out in the Lease Agreement) from Russia without a special authorization from the Russian government. *See* Defense Ex. N. Despite Defendants' efforts, they have been unable to obtain such special authorization from the Russian Government.

The evidence presented at trial confirms that Defendants have not obtained permission to fly the engines, aircraft and the original hard copy records relating to each out of Russia and that absent such permission it is impossible for them to do so. *See* Walton Deposition. BOCA's own efforts to research replacement engines confirms as much. *See* Walton Deposition. Nor have Defendants been able to obtain the only known replacement engines from non-party Rainbow.

**D. Nothing In The Lease Agreements Precludes The Impossibility Defense**

The Lease Agreements do not preclude Defendants' impossibility defense, rather, they expressly excuse Defendants' performance due to impossibility. The Second Circuit has made clear that the impossibility doctrine is only unavailable when "the contract terms [are]

unambiguous" and the "plain language of the contract obligates" Defendants to perform in all scenarios, such as where the contract expressly states that Defendants will "take all other actions necessary to ensure that [it] shall be able to perform its obligations" under the contract. *See Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville*, 290 F. App'x 430, 432 (2d Cir. 2008).

Here, the Lease Agreements contain no such language. To the contrary, Section 12.04 of the Lease Agreements provides that the Defendants' obligations for performance thereunder are suspended in cases of impossibility. *See* Lease Agreements, Sec. 12.04 ("except that such obligations shall be suspended if and to the extent that the performance thereof by Lessee shall be made impossible as the result of such requisition"). This suggests that the parties contemplated that performance generally under the Lease Agreement be excused based upon impossibility. *See Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992) ("the entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency"). The fact that the parties knew how to address impossibility, and did so, is critical. The failure to prevent the impossibility defense is clear and unambiguous.

### III. PROPOSED FINDING NO. 3: PLAINTIFF FAILED TO MITIGATE ITS DAMAGES

The evidence establishes that Plaintiff failed to mitigate its damages. "In a breach of contract action, a plaintiff ordinarily has a duty to mitigate the damages that he incurs. If the plaintiff fails to mitigate his damages, the defendant cannot be charged with them. This duty applies to those damages that the plaintiff could have avoided with reasonable effort and without undue risk, burden, or expense." *Tang Cap. Partners, LP. v. BRC Inc.*, 2023 WL 2396635, at *18 (S.D.N.Y. Mar. 8, 2023) (issue of fact whether plaintiff properly mitigated is an issue for trial). The evidence presented at trial clearly demonstrates a insufficient mitigation efforts on the part of Plaintiff to (1) procure replacement engines; (2) obtain an alternative lessee for the

aircraft located in the USA; and (3) to attempt to have the planes and engines in Russia flown out of Russia.  *See* Walton Deposition.

| | |
|---|---|
| DATED: March 27, 2023<br>New York, New York | Respectfully submitted,<br><br>**MCGRAIL & BENSINGER LLP**<br><br>_____<br>Gabrielle Y. Vázquez<br>Jeffrey Ephraim Glatt<br>888-C 8th Ave., #107<br>New York, New York 10019<br>Telephone: (917) 509-7818<br><br>*Counsel for Defendants*<br>*AirBridgeCargo Airlines, LLC*<br>*and Volga-Dnepr Logistics B.V.* |